# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ASCEND ELEMENTS, INC. *et al.*,[1] | ) Case No. 26-90440 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

## DEBTORS' **EMERGENCY** MOTION FOR ENTRY OF ORDERS(I)(A) APPROVING BID PROCEDURES, (B) AUTHORIZING DESIGNATION OF A STALKING HORSE BIDDER, (C) SCHEDULING AN AUCTION, RELATED DEADLINES, AND A SALE HEARING, AND (D) GRANTING RELATED RELIEF; AND (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS, AND (C) GRANTING RELATED RELIEF

**Emergency relief has been requested. Relief is requested not later than 11:00 a.m. (prevailing Central Time) on April 16, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on April 16, 2026 at 11:00 a.m. (prevailing Central Time) at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Courtroom 402, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JUDGELOPEZ". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ascend Elements, Inc. (2893) and Ascend Elements US, LLC (8309). The location of the Debtors' service address is: 133 Flanders Road, Westborough, MA 01581.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this *Emergency Motion for Entry of Orders (I)(A) Approving Bid Procedures, (B) Authorizing Designation of a Stalking Horse Bidder, (C) Scheduling an Auction, Related Deadlines, and a Sale Hearing, and (D) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets, (B) Approving the Assumption and Assignment of Certain Contracts, and (C) Granting Related Relief* (the "Motion") and in support submit the following:

## PRELIMINARY STATEMENT

1. The Debtors commenced these chapter 11 cases against a backdrop of acute liquidity constraints caused by construction delays and cost overruns at the Apex 1 facility, operating limitations at Apex 0, and adverse commodity pricing. The primary goal of these chapter 11 cases is to preserve liquidity, stabilize operations, and provide the breathing room necessary for the Debtors to explore a value-maximizing transaction or other restructuring alternatives for the benefit of all stakeholders.

2. Consistent with that objective, the Debtors seek approval of bid procedures to govern a marketing and sale process for substantially all of their assets and to preserve flexibility to designate one or more Stalking Horse Bidders later in the process if doing so would maximize value for the estates.

3. Through this Motion, the Debtors seek approval of bid procedures to govern a marketing and sale process for substantially all of their assets pursuant to section 363 of the Bankruptcy Code. The proposed Bid Procedures are designed to maximize value by encouraging competitive bidding while providing the certainty and structure necessary to consummate a going-concern or other value-maximizing transaction on an expedited timeline.

4. The proposed Bid Procedures preserve the Debtors' flexibility, in the exercise of their business judgment, to designate one or more Stalking Horse Bidders later and to seek approval of any related break-up fee, expense reimbursement, and minimum overbid

requirement (collectively, "Bid Protections") through a stalking horse notice process if appropriate. Without limiting that flexibility, no Stalking Horse Bidder has been designated and the Debtors are not requesting approval of any stalking horse agreement or bid protections at this time.

5.      Time is of the essence here. The Debtors' liquidity constraints require an expedited sale timeline to preserve going-concern value, maintain operations, and avoid further deterioration of the Debtors' business.  While the Debtors are continuing to explore potential debtor-in-possession financing, the Debtors are currently funding these chapter 11 cases with their existing cash on hand through the consensual use of the Senior Secured Holders' cash collateral.

6.      The Debtors believe that the relief requested herein represents a sound exercise of the Debtors' business judgment.  Approval of the Bid Procedures will enable the Debtors to move forward promptly with a transparent, competitive process that maximizes value and positions the estates to achieve the highest or otherwise best recovery for stakeholders. Accordingly, the Debtors respectfully request that the Court grant the Motion in all respects.

## RELIEF REQUESTED

7.      By this Motion, the Debtors seek entry of two orders,

    a.  an order, substantially in the form attached hereto (the "Bid Procedures Order"):

        i.   authorizing and approving the proposed Bid Procedures (the "Bid Procedures") substantially in the form attached as **Exhibit 1** to the Bid Procedures Order, in connection with one or more sale transactions (each, a "Sale Transaction");

        ii.  authorizing the Debtors, in their discretion, to designate one or more stalking horse bidders (the "Stalking Horse Bidders" for some or all of the Assets, to enter into one or more stalking horse asset purchase agreements, and to seek approval of any related bid protections, including any break-up fee, expense reimbursement, and minimum overbid requirement (collectively, the "Bid Protections"), in accordance with the Bid Procedures and the Bid Procedures Order;

iii.    scheduling (a) an auction in connection with a Sale Transaction (the "Auction"), (b) a hearing date in connection with Sale Transaction(s) (the "Sale Hearing"), and (c) the objection deadline for approval of one or more Sale Transactions (the "Sale Objection Deadline");

iv.    approving the form and manner of the notice of the Auction and Sale Transaction, substantially in the form attached as **Exhibit 2** to the Bid Procedures Order (the "Sale and Auction Notice") and the notice of successful bidder (the "Notice of Successful Bidder"), substantially in the form attached as **Exhibit 4** to the Bid Procedures Order;

v.    approving procedures (the "Assumption and Assignment Procedures") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale Transaction(s) (collectively, the "Assigned Contracts and Leases");

vi.    approving the form and manner of notice to each relevant non-Debtor counterparty (each, a "Contract/Lease Counterparty") to an executory contract or unexpired lease regarding the Debtors' proposed assumption and assignment of the Assigned Contracts and Leases, including notice of proposed amounts necessary to cure any defaults thereunder (the "Cure Costs"), substantially in the form attached to the Bid Procedures Order as **Exhibit 3** (the "Assumption and Assignment Notice"); and

vii.    granting related relief; and

b.    an order (the "Sale Order"), a form of which will be filed by the Debtors prior to the Sale Hearing:

i.    approving the sale to the Stalking Horse Bidder or other Successful Bidder(s) (as defined in the Bid Procedures) pursuant to section 363 of the Bankruptcy Code, free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and other interests thereon;

ii.    authorizing the assumption and assignment of the Assigned Contracts and Leases; and

iii.    granting related relief.

4

8.     In support of this Motion, the Debtors rely on the First Day Declaration (as defined below) which is incorporated by reference, and such other and further evidence the Debtors will file in advance of the hearing to approve the Bid Procedures.[2]

## JURISDICTION AND VENUE

9.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     The bases for the relief requested are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures").

## BACKGROUND

### A.  General Background

12.     On April 9, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have filed a motion requesting procedural consolidation and joint administration

---

[2]   Counsel for the Debtors and counsel for the Senior Secured Holders continue to work through a consent and consultation protocol that will be reflected in a revised form of Bid Procedures Order that will be filed in advance of the hearing to approve the Bid Procedures.

of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated as of the date hereof.

13.     A detailed description of the Debtors and their businesses, operations, corporate structure, capital structure, and the events leading to the commencement of the Debtors' chapter 11 cases is set forth in the *Declaration of Linh Austin in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 11].

14.     The Debtors are in the business of recovering critical minerals from used lithium-ion batteries and giga-factory scraps to create Black Mass and refine it at scale into battery-grade materials, including lithium carbonate and precursor cathode active material ("pCAM"), utilizing the Company's proprietary Hydro-to-Cathode technology.  The Debtors operate a Black Mass shredding and lithium carbonate facility in Covington, Georgia, which specializes in the pretreatment and shredding of Black Mass and plays a critical role in the initial stages of battery material recovery.  The Debtors also hold a 50% interest in an operational battery metals recovery joint venture in Zawiercie, Poland, and maintain research and development capabilities focused on advanced battery materials.  In addition, the Debtors' assets include a battery material plant in Hopkinsville, Kentucky, currently under construction, which is designed for the production of lithium carbonate and pCAM at commercial scale.

15.     Despite the Company's technological advantages, the Debtors faced insurmountable near-term liquidity constraints stemming from construction delays and cost overruns at the Hopkinsville facility, a utility connection constraint limiting production at the Covington facility, and sustained commodity price pressure on Black Mass, pCAM, and lithium carbonate. A dispute with primary contractor Turner-Kokosing Joint Venture

("TKJV"), which has asserted claims of approximately $138.4 million subject to the Debtors'

counterclaims alleging fraudulent overbilling of at least $16 million, and related subcontractor

liens further exacerbated these challenges. After exhausting out-of-court restructuring

alternatives, the Debtors commenced these chapter 11 cases to preserve and maximize value

for all stakeholders.

### B. The Debtors' Prepetition Marketing Process

16.     The Debtors determined that commencing these chapter 11 cases was the best

available option to preserve liquidity, stabilize operations, and provide the breathing room

necessary to pursue a value-maximizing transaction or other restructuring alternatives for the

benefit of their estates and all stakeholders. To that end, the Debtors began a prepetition

marketing process with the assistance of their proposed investment banker, Jefferies LLC, and

have continued to engage with interested parties regarding a potential going-concern or other

value-maximizing transaction. The Debtors intend to continue that process postpetition

pursuant to the Bid Procedures and, if appropriate, may later designate one or more Stalking

Horse Bidders to establish a transaction baseline and promote further bidding. At present,

however, no Stalking Horse Bidder has been designated, no stalking horse agreement is before

the Court, and the Debtors seek approval only of the Bid Procedures and related sale process

relief.

OVERVIEW OF THE BID PROCEDURES

17.     The Debtors believe that the proposed Bid Procedures, attached to the Bid

Procedures Order as **Exhibit 1**, are fair and appropriate under the circumstances and consistent

with the Debtors' goals in the marketing and sale process (the "Sale Process"). The Bid

Procedures are typical of bid procedures ordered by this Court and are designed to promote a

competitive and expedient sale process. The following summary is qualified in its entirety by

reference to the Bid Procedures, which shall control in the event of any inconsistency.

18.    The Bid Procedures contain the following key provisions, which are summarized below in a provision-by-provision format and more fully described in the Bid Procedures:

a.  **Participation Requirements.** To participate in the sale process and receive diligence access, a prospective bidder must submit the required preliminary bid documents, including an executed confidentiality agreement, evidence of a bona fide interest in the Assets, and preliminary proof of financial capacity.

b.  **Bid Deadline and Qualified Bid Requirements**. To be considered a Qualified Bidder, a bidder must timely submit a written bid that includes the required proposed asset purchase agreement, proposed sale order, financial and adequate assurance information, a 10% good faith deposit (other than certain stalking horse and credit bids), and the other certifications, acknowledgments, and commitments set forth in the Bid Procedures.

c.  **Bid Review and Baseline Bid**. The Debtors may evaluate timely bids using the Bid Assessment Criteria, engage with bidders to cure deficiencies or improve bids, determine which bids constitute Qualified Bids, and designate the highest or otherwise best Qualified Bid as the Baseline Bid for the Auction.

d.  **Stalking Horse Process and Bid Protections**. No Stalking Horse Bidder has been designated and no Bid Protections are being requested at this time, but the Debtors may later designate a Stalking Horse Bidder and seek approval of related Bid Protections, including any break-up fee, expense reimbursement, and minimum overbid requirement, through the stalking horse notice process described in the Bid Procedures.

e.  **Auction Trigger and Participation**. If the Debtors receive more than one Qualified Bid for the Assets, the Debtors will conduct an Auction; if not, the Debtors may elect not to hold one. Any Auction may be held in person or virtually, and only Qualified Bidders may participate, subject to reasonable limits imposed by the Debtors.

f.  **Overbids**. Bidding at the Auction will begin at the Baseline Bid, and each subsequent Overbid, including any bid by a Stalking Horse Bidder, must exceed the then-prevailing highest or otherwise best bid by at least $500,000 of additional value, subject to the Debtors' right to increase or decrease the Minimum Overbid during the Auction.

g.  **Successful Bid, Backup Bid, and Notice of Successful Bidder**. At the conclusion of the Auction, the Debtors will select the highest or otherwise best Successful Bid, designate the next-highest or otherwise best bid as the Backup Bid, and file the Notice of Successful Bidder identifying the Successful Bidder, any Backup Bidder, and the material terms of the selected bids.

19.     Importantly, the Bid Procedures recognize and comply with the Debtors' fiduciary obligations to maximize value and, as such, do not impair the Debtors' ability to consider bid proposals, whether for the purchase of some or all of the Assets, and provide the Debtors with sufficient flexibility to modify the Bid Procedures as may be necessary to maximize value for their estates.

20.     To ensure that the Sale Process maximizes value for the benefit of the Debtors' estates, the Debtors seek approval of the following proposed schedule, certain portions of which may be subject to extension and other modifications in accordance with the Bid Procedures.

**The Proposed Schedule**

21.     The Debtors seek approval of the Bid Procedures and Sale schedule set forth below in order to establish a transparent and orderly process for the solicitation, receipt, and evaluation of bids on an efficient timeline that allows the Debtors to consummate one or more Sale Transactions and emerge from these chapter 11 cases expeditiously. The proposed timeline contemplates consummation of a Sale Transaction no later than 90 calendar days following the Petition Date. Accordingly, subject to Court availability, the Debtors request that the Court approve the proposed sale timeline:[3]

| Date and Time*[4] | Event or Deadline |
|---|---|
| May 1, 2026 | **Indication of Interest Deadline** <br><br> Deadline for submitting non-binding indications of interest to the proposed counsel for the Debtors for the Assets. |
| May 7, 2026 | **Stalking Horse Designation Deadline** |

---

[3]   In the case of any inconsistencies between this chart and the Bid Procedures attached to the Bid Procedures Order as Exhibit 1, the Bid Procedures will control.

[4]   Such dates may be extended by the Debtors with the consent of the Senior Secured Holders.

| | Deadline by which the Debtors may file a stalking horse notice designating any Stalking Horse Bidder and any proposed Bid Protections. |
|---|---|
| May 9, 2026 | **Assumption and Assignment Notice Deadline**<br><br>Deadline by which the Debtors must file and serve the Assumption and Assignment Notice on Contract/Lease Counterparties |
| 5 Days after Service of Assumption and Assignment Deadline | **Assumption and Assignment Objection Deadline**<br>Deadline by which parties must file any Assumption and Assignment Objection. |
| May 9, 2026 at 11:59 p.m. (prevailing Central Time) | **Bid Deadline**<br>Deadline by which bidders must submit Qualified Bids. |
| May 12, 2026 at 10:00 a.m. (prevailing Central Time) | **Auction (if any)**<br>The Auction will be held either (i) at the office of Norton Rose Fulbright US LLP, 1550 Lamar Street, Suite 2000, Houston, Texas or (ii) at such later date and time or other location, as selected by the Debtors in accordance with the Bid Procedures. |
| 1 Day after the conclusion of the Auction | **Notice of Successful Bidder**<br>Deadline by which the Debtors must file and serve the Notice of Successful Bidder |
| 3 Days after the conclusion of the Auction | **Sale Objection Deadline**<br>Deadline by which parties must file and serve any Sale Objection. |
| May 17, 2026 | **Sale Hearing**<br>Hearing to consider approval of the Sale Transaction and related relief, subject to the Court's availability |

22.     The sale timeline is reasonable and essential for preserving the value of the Debtors' estates in light of the Debtors' constrained liquidity. The proposed timeline provides adequate notice to parties in interest while preserving the ability to obtain entry of a Sale Order within 38 days of the Petition Date. This schedule complements the Debtors' prepetition marketing process and provides the Debtors with sufficient time to finalize their marketing

efforts and for potential purchasers to conduct due diligence and formulate a value-maximizing bid for the Assets.

23.     Accordingly, the Debtors believe the relief requested herein is in the best interests of the Debtors' estates, will provide interested parties with sufficient opportunity to participate, and should therefore be approved

**Potential Designation of a Stalking Horse Bidder**

24.     To further increase the competitiveness of the marketing and sale process, the Debtors seek authority, but not direction, to designate one or more Stalking Horse Bidders for some or all of the Assets later in the process and, if appropriate, to offer such bidder or bidders customary bid protections in accordance with the Bid Procedures and subject to the consent of the Senior Secured Holders and the notice procedures described below.

25.     If the Debtors determine, in the exercise of their business judgment, that designation of a Stalking Horse Bidder would maximize value, the Debtors will file a stalking horse notice identifying the proposed Stalking Horse Bidder, the material terms of the proposed stalking horse bid, and any proposed bid protections, and parties in interest will have an opportunity to object before any such designation or protections become effective.

26.     At present, no Stalking Horse Bidder has been designated, no stalking horse agreement is attached to this Motion, and no bid protections are being requested. Instead, the Debtors propose to make a form asset purchase agreement available to bidders in the Data Room, and any bidder submitting a bid will be required to provide a marked version of that form asset purchase agreement as part of its bid package by the Bid Deadline.

**Form and Manner of Sale and Auction Notice and Notice of Successful Bidder**

27.     The Sale and Auction Notice, substantially in the form attached as **Exhibit 2** to the Bid Procedures Order, is reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Auction (if held), the Bid Procedures, and the dates and

11

deadlines related thereto. Within three business days after entry of the Bid Procedures Order, the Debtors will cause the Sale and Auction Notice to be served on: (a) the Office of the United States Trustee for the Southern District of Texas; (b) all parties on the Debtors' creditor matrix; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state attorneys general for all states in which the Debtors conduct business; (f) counsel to the collateral agent for the CLN Noteholders, (g) counsel to the Senior Secured Holders; (h) any statutory committee appointed in these chapter 11 cases; and (i) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).

28.     In addition, as soon as reasonably possible after entry of the Bid Procedures Order, the Debtors will publish the Sale and Auction Notice, with any modifications necessary for ease of publication, on one occasion in either the *New York Times* (national edition), *Financial Times* (global edition), or *Wall Street Journal* (national edition). The Debtors will also publish the Sale and Auction Notice on the Claims and Noticing Agent's case website: www.veritaglobal.net/ascend (the "Case Website").

29.     Promptly after the conclusion of the Auction (if any), and in any event by the deadline set forth in the Bid Procedures Order, the Debtors will file with the Court and serve on the parties that received notice of this Motion and each Contract/Lease Counterparty that received the Assumption and Assignment Notice or any Supplemental Assumption and Assignment Notice, the Notice of Successful Bidder, substantially in the form attached to the Bid Procedures Order as **Exhibit 4**. The Debtors will also post the Notice of Successful Bidder on the Case Website. As so published and served, the Notice of Successful Bidder is reasonably calculated to provide parties with timely and proper notice of the proposed sale, including: (a) the Successful Bidder; (b) any Backup Bidder; (c) the date, time, and place of the Sale Hearing; and (d) the applicable post-Auction objection deadlines.

**The Assumption and Assignment Procedures and Assumption and Assignment Notice**

30.     The Debtors are also seeking approval of the Assumption and Assignment Procedures set forth below to facilitate the fair and orderly assumption, assignment, or rejection of certain executory contracts and unexpired leases in connection with the Sale. The proposed Assumption and Assignment Procedures are as follows:

a. ***Assumption and Assignment Notice.*** On or before the Assumption and Assignment Notice Deadline set forth in the proposed schedule above, the Debtors will file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Assumption and Assignment Notice attached as **Exhibit 3** to the proposed Bid Procedures Order on counterparties to executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (collectively, the "Contract/Lease Counterparties," and each, a "Contract/Lease Counterparty"), and post the Assumption and Assignment Notice on the Case Website;

b. ***Content of Assumption and Assignment Notice***. The Assumption and Assignment Notice will notify the applicable Contract/Lease Counterparties that executory contracts and unexpired leases may be subject to assumption and assignment in connection with the Sale and will contain: (i) a list of the applicable contracts and leases that may be assumed and assigned in connection with the Sale (collectively, the "Assigned Contracts and Leases"); (ii) the applicable Contract/Lease Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary, if any, to cure any monetary defaults under each such contract or lease (the "Cure Costs"); and (iv) the deadline by which any Contract/Lease Counterparty to any such contract or lease must file an objection to the proposed assumption, assignment, or cure and the procedures relating thereto (the "Assumption and Assignment Objection"); *provided* that service of an Assumption and Assignment Notice does not constitute an admission that any contract or lease is an executory contract or unexpired lease or guarantee that such contract or lease will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

c. ***Assumption and Assignment Objections***. Assumption and Assignment Objections, if any, must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Assumption and Assignment Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract/Lease Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served on the following parties (collectively, the "Objection Notice Parties"): (a) counsel to the Debtors, Norton Rose Fulbright US LLP, 1550 Lamar Street, Suite 2000, Houston, Texas 77010, Attn: Ryan Manns, Jason Blanchard, and Maria Mokrzycka;

13

(b) the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Ha Nguyen (Ha.Nguyen@usdoj.gov) and Vianey Garza (Vianey.Garza@usdoj.gov); (c) counsel to the collateral agent for the CLN Noteholders; (d) counsel to the Senior Secured Holders; and (e) proposed counsel for the official committee of unsecured creditors, no later than the date and time set forth for the Assumption and Assignment Objection Deadline in the proposed schedule above; *provided* that the Debtors may modify the Assumption and Assignment Objection Deadline by filing a notice of such modification with the Court.

d. ***Effects of Filing an Assumption and Assignment Objection.*** A properly filed Assumption and Assignment Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the contract or lease at issue and/or objection to the accompanying Cure Costs, as and to the extent set forth in it, but will not constitute an objection to the remaining relief requested in this Motion.

e. ***Dispute Resolution***. Any Assumption and Assignment Objection to the proposed assumption and assignment of a contract or lease or Cure Costs that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court. To the extent that any Assumption and Assignment Objection cannot be resolved by the parties, such contract or lease shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection, to be determined in the applicable Successful Bidder's reasonable discretion. To the extent an Assumption and Assignment Objection remains unresolved, the contract or lease may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Assumption and Assignment Objection after notice and a hearing. If an Assumption and Assignment Objection is not satisfactorily resolved, the Successful Bidder may determine that such contract or lease should not be assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract or lease. Notwithstanding the foregoing, if an Assumption and Assignment Objection relates solely to the Cure Costs (any such objection, a "Cure Dispute"), the applicable contract or lease may be assumed by the Debtors and assigned to the Successful Bidder *provided* that the cure amount the applicable Contract/Lease Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by such Contract/Lease Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

f. ***Supplemental Assumption and Assignment Notice***. If the Debtors discover contracts or leases inadvertently omitted from the Assumption and Assignment Notice or the Successful Bidder identifies other contracts or leases that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Successful Bidder, at any time before the closing of the Sale supplement the Assumption and

Assignment Notice with previously omitted contracts or leases or modify a previously filed Assumption and Assignment Notice, including by modifying the previously stated Cure Costs associated with any contract or lease (the "Supplemental Assumption and Assignment Notice"). The Debtors shall serve such Supplemental Assumption and Assignment Notice on the Contract/Lease Counterparties to contracts or leases that were added or removed or to the Contract/Lease Counterparties to contracts or leases for which the Cure Costs were changed.

g. ***Objection to the Supplemental Assumption and Assignment Notice.*** Any Contract/Lease Counterparty listed on the Supplemental Assumption and Assignment Notice may file an objection (a "Supplemental Assumption and Assignment Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable contracts or leases or the proposed Cure Costs included in the Supplemental Assumption and Assignment Notice, if any. All Supplemental Assumption and Assignment Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed with the Court and served on the Objection Notice Parties no later than 4:00 p.m. (prevailing Central Time) on the date that is 5 days following the date of service of such Supplemental Assumption and Assignment Notice, which date will be set forth in the Supplemental Assumption and Assignment Notice.

h. ***Dispute Resolution of Supplemental Assumption and Assignment Objections.*** If a Contract/Lease Counterparty files a Supplemental Assumption and Assignment Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant contracts and leases. If there is no such objection, then the Debtors shall obtain an order of the Court fixing the Cure Costs and approving the assumption of any contract or lease listed on a Supplemental Assumption and Assignment Notice. Notwithstanding the foregoing, if a Supplemental Assumption and Assignment Objection relates solely to the Cure Costs, the applicable contract or lease may be assumed by the Debtors and assigned to the Successful Bidder *provided* that the cure amount the applicable Contract/Lease Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by such Contract/Lease Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

i. ***No Assumption and Assignment Objections***. If no Assumption and Assignment Objections or Supplemental Assumption and Assignment Objections are timely filed, or if a Contract/Lease Counterparty does not file and serve an Assumption and Assignment Objection or a Supplemental Assumption and Assignment Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court

establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Assumption and Assignment Notice (or Supplemental Assumption and Assignment Notice) will control, notwithstanding anything to the contrary in any contract or lease or any other document, and (ii) the Contract/Lease Counterparty will be deemed to have consented to the assumption or assumption and assignment of the applicable contract or lease and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such contract or lease and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such contract or lease against the Debtors or the Successful Bidder, or the property of any of them.

j. ***Adequate Assurance Objection Deadline***. Any Contract/Lease Counterparty that wishes to object to the proposed assumption and assignment of a contract or lease, the subject of which objection is a Successful Bidder's (other than the Stalking Horse Bidder's) proposed form of adequate assurance of future performance (each such objection, an "Adequate Assurance Objection"), shall file and serve such objection on the Objection Notice Parties and the Successful Bidder or its counsel, if known, no later than the date and time set forth in the Notice of Successful Bidder (the "Adequate Assurance Objection Deadline"). If no Adequate Assurance Objections are timely filed, or if an objecting party does not file and serve an Adequate Assurance Objection in a manner that is consistent with the requirements set forth above for Assumption and Assignment Objections, and absent a subsequent order of the Court, (i) the assumption shall be effective, notwithstanding anything to the contrary in any contract or lease or any other document, and (ii) the Contract/Lease Counterparty will be deemed to have consented to the assumption or assumption and assignment of the applicable contract or lease and will be forever barred from asserting any other claims related to such contract or lease against the Debtors or the Successful Bidder, or the property of any of them.

k. ***Reservation of Rights***. Service of the Sale and Auction Notice, the Assumption and Assignment Notice, the Notice of Successful Bidder, and/or any Supplemental Assumption and Assignment Notice shall not constitute an admission that any contract or lease listed therein is an executory contract or unexpired lease under section 365 of the Bankruptcy Code and shall not require the Debtors to assume and/or assign such contract or lease.

## BASIS FOR RELIEF

**A. The Bid Procedures Are Fair, Designed to Maximize the Value Received for the Assets, and Consistent with the Debtors' Reasonable Business Judgment**.

31. A debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling the assets of a debtor's estate. *See, e.g., The Inst'l Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines,*

16

*Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale.").

32.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), 2017 WL 5484017, at *3 (Bankr. D. Del. Sept. 20, 2017) ("The relief requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate and its creditors.").

33.     The Bid Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate. *See Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty[5] to maximize and protect the value of the estate's assets); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that a main goal of any proposed sale of property of a debtor's estate is to maximize value).

34.     To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy transactions. *See In re ASARCO, L.L.C.*,

---

[5]     Bidding procedures providing for a court-approved auction process also allow a debtor to satisfy its fiduciary duty of maximizing value by selling assets through exposure to the market. *See Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010).

650 F.3d 593, 603 (5th Cir. 2011) (affirming the bankruptcy court's approval of bid procedures designed to maximize the value of the debtor's estate); *In re Bigler, LP*, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010) (providing that the two goals for a sale of the debtors' assets are "maximizing value for the estate and preserving the integrity of the judicial process"); *In re Monitor Dynamics, Inc.*, 2010 Bankr. LEXIS 4170, at *3 (Bankr. W.D. Tex. Aug. 3, 2010) (approving bid procedures and finding that they "represent the method for maximizing value for the benefit of the Debtor's estate").

35.     Here, the Bid Procedures are designed to facilitate orderly yet competitive bidding to maximize the value of the Assets. The Bid Procedures contemplate an open auction process with minimum barriers to entry.  The proposed sale timeline provides potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

36.     Moreover, a court-approved auction process is among the best ways to obtain the maximum value of a debtor's assets, as a full and fair price is presumed following such market exposure.  *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999).  This is especially true here, where any Sale Transaction will have been subjected to an extensive marketing process, both prepetition and postpetition, and intensively scrutinized by the Debtors and their advisors.  In addition, the availability of a form asset purchase agreement and the Debtors' ability, if appropriate, to later designate a Stalking Horse Bidder will help establish a transaction baseline that can be tested in the marketplace.  As such, creditors of the Debtors' estates can be assured that the consideration obtained will be fair and reasonable and at or above the prevailing market price.

37.     The proposed Bid Procedures will encourage competitive bidding and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. Accordingly, consistent with courts in this District evaluating

similar orders, the Court should enter the Bid Procedures Order. *See e.g., In re LifeScan Global Corp.*, No. 25-90259 (ARP) (Bankr. S.D. Tex. July 16, 2025); *In re Sunnova Energy Int'l Inc.*, No. 25- 90160 (ARP) (Bankr. S.D. Tex. July 11, 2025); *In re Treesap Farms, LLC*, No. 25-90017 (ARP) (Bankr. S.D. Tex. Mar. 19, 2025); *In re Steward Health Care Sys.*, No. 24-90213 (CML) (Bankr. S.D. Tex. Jun. 3, 2024); *In re Robertshaw US Holding Corp.*, No. 24-90052 (CML) (Bankr. S.D. Tex. Mar. 21, 2024); *In re Center for Autism and Related Disorders*, LLC, No. 23-90709 (DRJ) (Bankr. S.D. Tex. Jun. 16, 2023).

**B.  The Court Should Approve the Debtors' Authority to Designate a Stalking Horse Bidder Later in the Process as a Sound Exercise of Business Judgment**.

38.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy courts routinely authorize the sale of a debtor's assets if the sale is based on "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d at 1226; *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

39.     Once a debtor articulates a valid business justification, the court should review that request under the business judgment rule. *See In re Gulf Coast Oil Corp.*, 404 B.R. 407, 415 (Bankr. S.D. Tex. 2009) (noting that a debtor has the discretionary authority to exercise business judgment given to an officer or director of a corporation). The business judgment rule protects certain debtor decisions—such as the Debtors' entry into one or more definitive purchase agreements—from judicial second-guessing. *See Comm. of Asbestos-Related Litigants v. Johns- Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a debtor's management decisions" and courts generally will not entertain objections to the debtor's conduct after a reasonable basis is set forth); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's

19

estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.").[6] Consequently, if a debtor's actions satisfy the business judgment rule, then the transaction should be approved under section 363(b)(1) of the Bankruptcy Code.

### i.     A Sound Business Justification Exists for the Sale Transaction.

40.     The Debtors have a sound business justification for seeking authority to designate one or more Stalking Horse Bidders later in the sale process if doing so becomes value-maximizing.  Preserving that flexibility allows the Debtors to continue marketing the Assets while retaining the ability to establish a transaction baseline and encourage additional bidding if a stalking horse proposal later materializes.

41.     The stalking horse procedures also provide a framework under which the Debtors may file a stalking horse notice, present the material terms of any proposed stalking horse bid and related protections, and allow parties in interest to object before any such protections become effective.

42.     At the same time, because no Stalking Horse Bidder has been designated, the Debtors are not asking the Court to approve any stalking horse agreement or bid protections now. The requested relief simply preserves the Debtors' flexibility to pursue that path later if it is in the best interests of the estates.

### ii.    Any Later-Requested Bid Protections Should Be Considered Pursuant to the Stalking Horse Notice Procedures.

43.     Historically, bankruptcy courts have approved bidding incentives, including breakup fees awarded to an initial bidder, or "stalking horse," in the event of a successful overbid based on the business judgment of the debtor.  *See, e.g. In re 995 Fifth Ave. Assocs.,*

---

[6]     *Accord Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a debtor's management decisions" and courts generally will not entertain objections to the debtor's conduct after a reasonable basis is set forth).

*L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (noting that "the business judgment of the Debtor is the standard applied under the law in this district" and applying the standard to a breakup fee); *Asarco, Inc. v. Elliot Mgmt. (In re Asarco, LLC),* 650 F.3d 593, 597-98, 601-03 n. 9 (5th Cir. 2011).

44.     The Debtors believe that preserving the ability to later provide bid protections to a Stalking Horse Bidder, if one is designated, is in the best interests of their estates.  The potential later designation of a Stalking Horse Bidder may promote competitiveness by establishing a transaction baseline and providing a framework and draft documents against which interested parties may propose an alternative transaction.

45.     The Fifth Circuit has applied the deferential business judgment standard to evaluate whether proposed bid protections are appropriate under the circumstances. *See In re ASARCO, L.L.C.*, 650 F.3d at 602-03 (affirming bankruptcy court's decision to apply the business judgment rule to evaluate whether an expense reimbursement bid protection was permissible).  However, in some circumstances, courts in the Fifth Circuit have applied the more stringent strict necessity standard under section 503 of the Bankruptcy Code.  *See Matter of Bouchard Transp. Co., Inc.*, 74 F.4th 743, 750 (5th Cir. 2023) (finding it unnecessary to determine which standard applied to the case at hand where, under either standard, the proposed protections should be approved).

46.     Here, the Court need not approve any bid protections now because none are being requested. The Debtors instead request approval of procedures under which, if the Debtors later determine that designation of a Stalking Horse Bidder and the offering of bid protections are appropriate, the Debtors may, with the consent of the Senior Secured Holders, file a stalking horse notice setting forth the proposed bidder, the material terms of the proposed

bid, and any proposed bid protections, and parties in interest will have an opportunity to object before such protections become effective.

47.     Accordingly, for the reasons set forth above, the Debtors respectfully request that the Court approve the stalking horse notice procedures and authorize the Debtors to designate one or more Stalking Horse Bidders later in the process, if appropriate, in order to maximize the value of the Debtors' Assets for the benefit of their estates.

> iii.     ***The Debtors Are Not Seeking Approval of Bid Protections at This Time***.

48.     No bid protections are currently before the Court.  If the Debtors later determine that bid protections are warranted in connection with a proposed stalking horse bid, the Debtors will seek approval of such protections in accordance with the Bid Procedures, the Bid Procedures Order, and the stalking horse notice procedures described herein.

**C.  The Sale of the Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f).**

49.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

50.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of any and all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "Interests"). *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

51.     Any Interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and any such Interest will be adequately protected by either being paid in full at the time of closing or by attaching to the net sale proceeds in the same order of priority as existed on the Petition Date and subject to any claims and defenses the Debtors may have with respect thereto. The Debtors accordingly request authority to convey the Assets to the Successful Bidder(s) free and clear of all Interests with any such Interests attaching to the net sale proceeds.

### D.  A Successful Bidder, and Any Later-Designated Stalking Horse Bidder, Should be Entitled to the Protections of Bankruptcy Code Section 363(m).

52.     The Debtors request that the Court find any Stalking Horse Bidder later designated in accordance with the Bid Procedures and/or any other Successful Bidder arising from the Auction (i) is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets and (ii) is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code.

53.     Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

54.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of

such integrity, a good faith finding may not be made. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Andy Frain Servs., Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

55.    If the Debtors later designate a Stalking Horse Bidder, the Debtors will demonstrate at the appropriate time that the stalking horse bid resulted from arm's-length, good-faith negotiations and that the Stalking Horse Bidder qualifies as a good-faith purchaser. Likewise, any Successful Bidder selected through the Bid Procedures and any Auction conducted thereunder should be entitled to the protections of section 363(m).

56.    In the event of a sale of the Assets to a Successful Bidder other than a Stalking Horse Bidder, the Debtors submit that the Successful Bidder would be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code. The Bid Procedures require each Qualified Bidder participating in the Auction to confirm that it has not engaged in any collusion with respect to any bid or the proposed sale transaction. Any asset purchase agreement with the Successful Bidder will be negotiated at arms' length and in good faith. Further, to the extent necessary, the Debtors will demonstrate at the Sale Hearing that such Successful Bidder conducted itself in good faith and did not engage in collusion.

57.    Accordingly, the Successful Bidder should likewise be subject to the protections provided by section 363(m) of the Bankruptcy Code. The Debtors believe that providing the Stalking Horse Bidder or the Successful Bidder, as applicable, with such protection will ensure that the maximum price will be received by the Debtors for the Assets and that closing of the Sale will occur promptly after the Sale Hearing.

### E. The Form and Manner of the Sale and Auction Notice and Notice of Successful Bidder Should Be Approved

58.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rules 2002(c) and 6004(a), (b), such notice must include the time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested herein. The Sale and Auction Notice contains the information required by Bankruptcy Rule 2002(c). Additionally, the Notice of Successful Bidder will provide parties in interest and affected Contract/Lease Counterparties with notice of the proposed sale to the Successful Bidder and the deadlines to file any objections thereto.

59.     Notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale and Auction Notice and the Notice of Successful Bidder, constitutes good and adequate notice of the proposed sale and the proceedings with respect thereto in compliance with the applicable requirements of Bankruptcy Rules 2002 and 6004. Accordingly, the Debtors request that the Court approve the form and manner of the Sale and Auction Notice and the Notice of Successful Bidder.

### F. The Assumption and Assignment Procedures Are Appropriate and Should Be Approved

#### i. The Assumption and Assignment of the Assigned Contracts and Leases Reflects the Debtors' Reasonable Business Judgment

60.     To facilitate and effectuate the sale of the Debtors' business as a going concern, the Debtors seek authority to assign or transfer the Assigned Contracts and Leases to a Successful Bidder (which may be the Stalking Horse Bidder) to the extent required by such bidder. Section 365 of the Bankruptcy Code authorizes a debtor to assume and assign its executory contracts and unexpired leases, subject to court approval; *provided* that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  The Debtors' decision to assume or reject an executory contract or unexpired lease

must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g.*, *Richmond Leasing*, 762 F.2d at 1309 (applying a business judgment standard to debtor's determination to assume unexpired lease).

61.     The Debtors also request that any party that fails to object to the proposed assumption and assignment of any of the Assigned Contracts and Leases be deemed to consent to the assumption and assignment of the applicable contract or lease pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the Cure Costs identified in the Assumption and Assignment Notice. *See, e.g.*, *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor was deemed to consent).

62.     Here, the Court should approve the decision to assume and assign the Assigned Contracts and Leases in connection with the Sale as a sound exercise of the Debtors' business judgment. First, the Assigned Contracts and Leases are essential to the value of the Assets and the Debtors' business as a going concern and, as such, they are critical to inducing the highest or otherwise best offer for the Assets. Second, it is unlikely that any purchaser would want to acquire certain of the Assets unless the contracts and leases needed to conduct business and manage day-to-day operations of those Assets were included in the transaction. Third, the Assigned Contracts and Leases will be assumed and assigned through the process approved by the Court pursuant to the Bid Procedures Order and, thus, Contract/Lease Counterparties and other stakeholders will have an opportunity to object.

63.     Accordingly, the assumption and assignment of the Assigned Contracts and Leases pursuant to the Assumption and Assignment Procedures should be approved as a sound exercise of the Debtors' business judgment.

### ii. Defaults Under the Assigned Contracts and Leases Will Be Cured in Connection with Any Sale Transaction

64.     Upon finding that a debtor has exercised its business judgment in deciding to assume an executory contract, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, pre-petition defaults under the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.  This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

65.     The statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be satisfied because the Assumption and Assignment Procedures provide a clear process by which to resolve disputes over cure amounts or other defaults. The Debtors are confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code and with due respect to the rights of non-debtor parties.

### iii. Non-Debtor Parties Will Be Adequately Assured of Future Performance.

66.     Similarly, the third requirement of section 365(b) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from section 2609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). Among other things,

adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

67.    The Debtors will demonstrate that the requirements for assumption and assignment of the Assigned Contracts and Leases to the Successful Bidder will be satisfied. The Debtors will evaluate the financial wherewithal of potential bidders before designating them as Qualified Bidders or a Successful Bidder (*e.g.*, financial credibility, willingness, and ability of the interested party to perform under the contracts and leases), including as it relates to each Qualified Bidder's willingness and ability to perform under the Assigned Contracts and Leases. Further, the Assumption and Assignment Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance and object to the assumption of the contracts and leases or proposed Cure Costs. The Court therefore will have a sufficient basis to authorize the Debtors to reject or assume and assign the contracts and leases as set forth in the definitive purchase agreement of the Successful Bidder.

### REQUEST FOR WAIVER OF STAY IMPOSED BY BANKRUPTCY RULES 6004 AND 6006

68.    The Debtors request that the Court waive the stays imposed by Bankruptcy Rules 6004(h) and 6006(d), which provide that, unless the court orders otherwise, "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order" and "an order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h) and 6006(d). As explained above, because of the Debtors' liquidity position, it is imperative that they move forward with the sale process promptly.

28

Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stays imposed by both Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), to the extent applicable, as the nature of the relief requested - including the assumption and assignment of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code - justifies immediate relief.

**RESERVATION OF RIGHTS**

69.     Nothing contained in this Motion is intended to be or shall be deemed as (i) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any particular claim, (vi) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vii) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (viii) an admission that any liens satisfied pursuant to this Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved), or (ix) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief requested, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

29

## NOTICE

70.     Notice of this Motion will be served on the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state attorneys general for all states in which the Debtors conduct business; (f) counsel to the collateral agent for the CLN Noteholders; (g) counsel to the Senior Secured Holders; and (h) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d). Given the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

**WHEREFORE,** the Debtors respectfully request that the Court grant the relief requested in this Motion by (a) entering the Bid Procedures Order, (b) ultimately entering the Sale Order (to be submitted prior to the Sale Hearing), and (c) granting such other and further relief as the Court deems just and proper.

Dated:   April 10, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Ryan Manns*
Ryan Manns (SBT 24041391)
Maria Mokrzycka (SBT 24119994)
1550 Lamar, Suite 2000
Houston, TX 77010
Tel: (713) 651-5151
Email: ryan.manns@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

and

Jason I. Blanchard (SBT 24130197)
Michael Berthiaume (SBT 24066039)
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
Tel: (214) 855-8210
Email:      jason.blanchard@nortonrosefulbright.com
Email: michael.berthiaume@nortonrosefulbright.com

***Proposed Counsel to the Debtors and Debtors in Possession***

**CERTIFICATE OF SERVICE**

I certify that on April 10, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

*/s/ Ryan Manns*
Ryan E. Manns