**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ASCEND ELEMENTS, INC. *et al.*,[1] | ) | Case No. 26-90440 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING THE SALE OF
CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR
OF CLAIMS, LIENS, AND ENCUMBRANCES, (II) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 50] (the "Motion")[2] filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") seeking, among other things, entry of an order (this "Order") approving the sale of the Debtors' assets and approving the assumption and assignment of certain contracts, and upon the *Declaration of Linh Austin in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 11], the *Declaration Of Michael O'Hara Of Jefferies LLC In Support of the Debtors' Emergency Motion for Entry Of Order (I)(A) Approving Bid Procedures, (B) Authorizing Designation Of A Stalking Horse Bidder, (C) Scheduling An Auction, Related Deadlines, and a Sale Hearing, and (D) Granting Related Relief; And (II)(A) Approving the Sale of the Debtors' Assets, (B) Approving the Assumption and Assignment of Certain*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Ascend Elements, Inc. (2893) and Ascend Elements US, LLC (8309).  The location of the Debtors' service address is: 133 Flanders Road, Westborough, MA 01581.

[2]   Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (as hereinafter defined), as applicable.

- 1 -

*Contracts, And (C) Granting Related Relief*, ("O'Hara Bid Procedures Declaration") [Docket No. 88] and upon the *Order (A) Approving Bid Procedures (B) Authorizing Designation of a Stalking Horse Bidder, (C) Scheduling an Auction, Related Deadlines, and a Sale Hearing, and (D) Granting Related Relief* [Docket No. 120] (the "Bid Procedures Order"); and that certain Asset Purchase Agreement, dated as of June 19, 2026 (together with all other agreements and other instruments deliverable thereunder or attached thereto or referenced therein, and as may be amended, modified, or supplemented, the "Asset Purchase Agreement"), a copy of which is attached hereto as **Exhibit 1**, by which R3 Lithium, Inc. (the "Purchaser") submitted the highest or best bid for the Acquired Assets (as defined in the Asset Purchase Agreement) as determined by the Debtors (such offer, the "Successful Bid"), and the Court having conducted a hearing to consider certain relief requested in the Motion on June [•], 2026 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered (i) the Motion; (ii) the Asset Purchase Agreement; (iii) the Bid Procedures Order, (iv) the First Day Declaration, (v) the O'Hara Bid Procedures Declaration, (vi) the *Declaration of Michael O'Hara in Support of Entry of an Order (I) Approving the Sale of the Debtors' Interests in the Covington, Georgia Assets Free and Clear of Encumbrances, Claims, Interests and Encumbrances, (II) Approving the Assumption and Assignment of Associated Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. [•]], (vii) the *Declaration of Adam Titus in Support of Entry of an Order (I) Approving the Sale of the Debtors' Interests in the Covington, Georgia Assets Free and Clear of Encumbrances, Claims, Interests and Encumbrances, (II) Approving the Assumption and Assignment of Associated Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. [•]], ((vi) – (vii) collectively, the "Sale Declarations"), (viii) the *Notice of*

#111838121v1

*Successful Bidder* [Docket No. [•]] (the "Notice of Successful Bidder"), (ix) the *First Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 240] (the "Assumption and Assignment Notice"), and (x) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

> A.      Jurisdiction and Venue.  The Court has jurisdiction to hear and consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. Without limiting the generality of the foregoing, this Court has exclusive *in rem* jurisdiction over the Acquired Assets pursuant to 28 U.S.C. § 1334(e), as such Assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein.  This is a core proceeding under 28 U.S.C.

---

[3]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

#111838121v1

§ 157(b), and the Court may enter a final order hereon under Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Final Order.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.      Statutory Predicates.  The statutory and other legal predicates for the relief sought by the Motion are sections 105(a), 363, 365, and 503 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014, Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas 2002-1 and 4002-1, and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures").

D.      Bid Procedures. On April 17, 2026, the Court entered the Bid Procedures Order, which among other things, (i) approved the Bid Procedures (as defined in the Motion), (ii) authorized the Debtors, in their discretion to designate one or more Stalking Horse Bidders for some or all of the Assets, to enter into one or more stalking horse asset purchase agreements, and to seek approval of any Bid Protections, (iii) scheduled (a) an auction in connection with a sale of the Assets (the "Auction") if the Debtors receive one or more timely and acceptable Qualified Bids, (b) a hearing to consider approval of one or more Sale Transactions as necessary, and (c) the objection deadline for approval of one or more Sale Transactions (the "Sale Objection Deadline"); (iv) approved the form and manner of notice of Sale and Auction Notice; (v) approved the form and manner of notice of the Successful Bidder; (vi) approved procedures (the "Assumption and Assignment Procedures") for the assumption and assignment of certain executory contracts and unexpired leases in connection with a Sale Transaction (collectively, the "Assigned Contracts"); and (vii) approved the form and manner of notice to each relevant non-Debtor counterparty (each,

- 4 -

a "Contract/Lease Counterparty") to an executory contract or unexpired lease regarding the Debtors' proposed assumption and assignment of the Assigned Contracts, including notice of proposed amounts (the "Cure Costs") necessary to cure any defaults thereunder (the "Assumption and Assignment Notice"). The Bid Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Debtors' assets. The Debtors conducted the sale process in accordance with the Bid Procedures and without collusion.

E.      Notice and Opportunity to Be Heard.  As evidenced by the certificates of service filed with respect to the Bid Procedures Order [Docket Nos. 110, 134, and 145], the Assumption and Assignment Notice, the Notice of Successful Bidder, and as demonstrated by the evidence presented at the Sale Hearing, the Debtors have complied with the Bid Procedures and otherwise have provided proper, timely, adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Motion, the Bid Procedures, the Sale Hearings, the Assumption and Assignment Procedures, the sale of the Acquired Assets pursuant to the Asset Purchase Agreement (the "Sale Transaction") free and clear of all Encumbrances (as defined in the Asset Purchase Agreement) other than the Permitted Encumbrances (also as defined in the Asset Purchase Agreement), and the assumption and assignment of the Assigned Contracts to be assumed and assigned to Purchaser at Closing pursuant to this Order and the terms of the Asset Purchase Agreement, in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a), 4001, 6004, 6006, 9007 and 9014, and the Bid Procedures Order, to all persons and entities entitled to such notice, and all other persons and entities as directed by the Court.  Such notice was good, sufficient and appropriate under the circumstances and reasonably calculated to reach and apprise all holders of Encumbrances, claims, and other interests,

- 5 -

including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liabilities of their right to appear and be heard, and was provided in accordance with the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the procedural due process requirements of the United States Constitution.  With respect to parties in interest whose identities could not be reasonably ascertained by the Debtors, the Publication Notice (as defined in the Bid Procedures Order) published in *The New York Times* on April 16, 2026 [Docket No. 127], and April 23, 2026 [Docket No. 134], was sufficient and reasonably calculated to provide notice to such parties under the circumstances.  No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Motion, the Sale Hearing, the Asset Purchase Agreement, the Sale, the Sale Transactions, the transactions contemplated by the Asset Purchase Agreement, or of the entry of this Sale Order is necessary or shall be required.

F.  Disclosures.  The disclosures made by the Debtors in the Bid Procedures Motion, the Motion, the Sale an, the Assumption and Assignment Notice, the Notice of Successful Bidder, and all other related notices and documents filed with the Court concerning the Asset Purchase Agreement and Sale Transaction were complete and adequate.

G.  Sound Business Purpose.  The Debtors, having determined that the Successful Bid was the highest and best offer for the Acquired Assets made by the Purchaser, have demonstrated good, sufficient and sound business purposes and justifications that approval and entry into the Sale Transaction, the Asset Purchase Agreement and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business

#111838121v1

justifications for entry into the Sale Transaction and the Asset Purchase Agreement include, but are not limited to, (a) the Asset Purchase Agreement constitutes the highest or best offer received for the Acquired Assets; (b) the Asset Purchase Agreement presents the best opportunity to maximize the value of the Acquired Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (c) failure to consummate the Sale Transaction expeditiously, as provided under the Asset Purchase Agreement, could materially diminish creditor recoveries; and (d) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtors' estates.

H.     Compliance with Bid Procedures.  The Debtors conducted an open and fair Sale Process.  The Sale Process was non-collusive in all respects, and all interested parties were provided a full, fair and reasonable opportunity to make an offer to purchase the Acquired Assets. The Debtors, the Purchaser and their respective counsel and other advisors have complied with the Bid Procedures and the Bid Procedures Order in all respects to the extent such are applicable.

I.     Highest or Best Value.  The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties and in consultation with the Consultation Parties, that the Purchaser's Successful Bid, as documented in the Asset Purchase Agreement, was the highest or otherwise best Qualified Bid for the Acquired Assets. Consummating the Sale Transaction will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction. The Debtors have demonstrated that entry into and consummation of the Sale Transaction constitutes the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates, and creditors, and all parties in interest, and the Debtors, and their respective current members, managers, officers, directors, employees, advisors, professionals or agents (in each case, solely in

#111838121v1

their capacity as such), shall have or incur no liability to the estates or any stakeholder in or against the Debtors or their assets for any act or omission in connection with, related to, or arising out of the negotiations or the consummation of the Sale Transaction, other than liability arising out of or relating to any fraud, as determined by a court of competent jurisdiction.

J.    Fair Consideration.  The consideration to be paid by the Purchaser under the Asset Purchase Agreement constitutes (i) fair and reasonable consideration for the Acquired Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof or the District of Columbia.

K.    Sufficiency of Marketing. As demonstrated by the Motion, the O'Hara Bid Procedures Declaration, the Sale Declarations, and the evidence set forth at the Sale Hearing, the Debtors and their professionals adequately marketed the Debtors' assets and conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bid Procedures and conducted a fair and open sale process. The sale process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the assets, and the process conducted by the Debtors pursuant to the Bid Procedures Order obtained the highest or otherwise best value for the Debtors' assets, and there was no other transaction available or presented that would have yielded a higher or better result. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective Bidders have been afforded a reasonable and fair opportunity to bid for the assets and/or file an objection to the Sale Transaction. The marketing process undertaken by the Debtors and their professionals and each of their respective agents and other representatives with respect

to the assets has been adequate and appropriate and reasonably calculated to maximize the value for the benefit of all of the Debtors' stakeholders in all respects.

L.      Free and Clear Sale.  The Debtors are authorized to sell the Acquired Assets free and clear of all Encumbrances (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Encumbrances that objected to the Sale Transaction or the Motion and that have a Encumbrance on the Acquired Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Encumbrance pursuant to section 363(f)(5), or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Encumbrances on the Acquired Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property in which such holders have a Encumbrance, in the same order of priority, and with the same validity, force and effect that such Encumbrances had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors and their estates.  Any holders of Encumbrances that did not object, or that withdrew their objections, to the Motion or the Sale Transaction, are deemed to have consented to the sale of the Acquired Assets free and clear of their respective Encumbrances on the Acquired Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

M.      Purchaser's Reliance on Free and Clear Sale.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Acquired Assets were not free and clear of all Encumbrances, or if the Purchaser would, or in the future could, be liable for any such Encumbrances.  A sale of the Acquired Assets other than one free and clear of all Encumbrances

- 9 -

would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Acquired Assets and the Debtors' estates, with less certainty than provided by the Sale Transaction. The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired Assets free and clear of all Encumbrances, including, without limitation, any potential derivative, vicarious, transferee or successor liability Encumbrances.

N.      No Successor or Other Derivative Liability.   By consummating the Sale Transaction pursuant to the Asset Purchase Agreement, the Purchaser is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Purchaser and any Debtor. The Purchaser is not holding itself out as a continuation of any Debtor. The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors or any of their estates. Neither the Purchaser nor any of its affiliates or their respective successors, assigns, members, partners, principals or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Asset Purchase Agreement. The sale and transfer of the Acquired Assets to the Purchaser, including the assumption by the Debtors and assignment, transfer and/or sale to the Purchaser of any of the Assigned Contracts, will not subject the Purchaser to any liability with respect to the operation of the Debtors' businesses prior to the

Closing or by reason of such transfer, except that, upon the Closing, the Purchaser shall remain liable for the applicable Assumed Liabilities (as defined in the Asset Purchase Agreement).

O.    Good Faith.  The Debtors, the Purchaser and their respective counsel and other advisors have negotiated and entered into the Asset Purchase Agreement and each of the transactions contemplated thereby in good faith, without collusion and from arms'-length bargaining positions.  The Purchaser is a good-faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Debtors were free to deal with any other party interested in acquiring all or some of the Acquired Assets.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Sale Transaction, the Asset Purchase Agreement or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, the Purchaser has not acted in a collusive manner with any person or entity.  All payments to be made by the Purchaser and all agreements entered into by the Purchaser and the Debtors and any other Seller under the Asset Purchase Agreement in connection with the Sale Transaction have been disclosed and are appropriate.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under laws of the United States, any state, territory, possession or the District of Columbia.

P.    Insider Status.  The Purchaser is not an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or

- 11 -

#111838121v1

controlling stockholders (or the equivalent thereof) exists between the Purchaser and any of the Debtors.

Q.      Assumption and Assignment of Contracts.  The assumption and assignment of the Assigned Contracts are an integral part of the Sale Transaction, are in the best interests of the Debtors and their estates and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Assigned Contracts (i) are necessary to sell the Acquired Assets to the Purchaser as contemplated by the Asset Purchase Agreement, (ii) allow the Debtors to sell the Acquired Assets to the Purchaser as a going concern, (iii) limit the losses suffered by the Contract/Lease Counterparties to the Assigned Contracts and (iv) maximize the recoveries of other creditors of the Debtors by avoiding claims against the Debtors' estates that would arise from the Debtors' rejection of the Assigned Contracts.  Any Contract/Lease Counterparty to any Contract that has not actually filed with the Court and served on the Objection Notice Parties (as defined in the Bid Procedures) an objection to the assumption and/or assignment of such Assigned Contract as of the applicable date specified in the Bid Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bid Procedures Order) is deemed to have consented to the assumption and assignment of the Assigned Contract.

R.      Compliance with Section 365 of the Bankruptcy Code.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Assigned Contracts.  The Debtors have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Assigned Contracts on or before the Closing Date (as defined in the Asset Purchase Agreement).  The Purchaser has demonstrated adequate assurance of future performance

- 12 -

of and under the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code.  The notice and opportunity to object provided to the Contract/Lease Counterparties to such Assigned Contracts and to other parties in interest, as set forth in the Assumption and Assignment Procedures contained in the Bid Procedures Order, fairly and reasonably protects any rights that such Contract/Lease Counterparties and other parties in interest may have with respect to such Assigned Contracts.  Pursuant to section 365(f) of the Bankruptcy Code, the Assigned Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Assigned Contracts or other restrictions prohibiting their assignment or transfer.

S.       Property of the Estates.  The Acquired Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

T.       Validity of the Sale Transaction.   The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction.  As of the Closing, the transfer of the Acquired Assets to the Purchaser will be a legal, valid and effective transfer of the Acquired Assets, including the Assigned Contracts, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets free and clear of all Encumbrances (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement).  The Debtors have full corporate or other applicable authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all

#111838121v1

necessary corporate action of the Debtors. Upon entry of this Order, other than any consents identified in the Asset Purchase Agreement, no consent or approval from any other person, entity or legal authority is required to consummate the Sale Transaction.

U.     No *Sub Rosa* Plan. Neither the Sale Transaction nor the Asset Purchase Agreement impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors. Neither the Sale Transaction nor the Asset Purchase Agreement constitutes a sub rosa or de facto plan of reorganization or liquidation, as neither proposes to (i) impair or restructure any existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or extend debt maturities.

V.     No Stay of Order. Time is of the essence to implement the Asset Purchase Agreement and consummate the Sale Transaction. The Sale Transaction must be approved and consummated promptly in order to preserve the value of the Acquired Assets and to ensure the Debtors' compliance with their obligations under their post-petition financing agreements. The Debtors have demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), and 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

#111838121v1

- 15 -

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.	Motion Granted.  The Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bid Procedures Order or otherwise) are GRANTED and approved as set forth herein.

2.	Objections Overruled.  Any objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled and all reservations of rights included such objections are hereby overruled on the merits with prejudice.

3.	Sale Transaction Approved.  The Asset Purchase Agreement and all transactions contemplated thereby are APPROVED. The Debtors have satisfied all requirements of sections 363(b) and 363(f) of the Bankruptcy Code, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of all liens, claims, encumbrances, and interests.

4.	Debtors' Performance Authorized.  Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtors are hereby authorized to enter into and perform their obligations under the Asset Purchase Agreement, and to take such other actions as may be necessary or desirable to effectuate the terms of the Asset Purchase Agreement and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, the Sale Transaction or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court.  The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to the Purchaser's possession any or all of the Acquired Assets, including

#111838121v1

the Assigned Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Asset Purchase Agreement and consummate the Sale Transaction, without further order of the Court.

5.       <u>Debtors' Effectuation of Asset Purchase Agreement</u>. The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents with respect to the Acquired Assets that are necessary or appropriate to effectuate the Asset Purchase Agreement, the Sale Transaction or this Order, including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

6.       <u>Valid Transfer</u>.  Effective as of the Closing Date, the sale and assignment of the Acquired Assets and the Assigned Contracts by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets and the Assigned Contracts, notwithstanding any requirement for approval or consent by any person, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets and the Assigned Contracts, free and clear of all Encumbrances (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

7.       <u>Free and Clear Sale</u>.  Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and transfer to the Purchaser the Acquired Assets.  The sale and transfer of the Acquired Assets to the

#111838121v1

Purchaser shall vest the Purchaser with all right, title and interest of the Debtor in and to the Acquired Assets free and clear of any and all Encumbrances of any person or entity (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), with all such Encumbrances to attach to the net proceeds of the Sale Transaction ultimately attributable to the sale of the property in which such holders have a Encumbrance, in the same order of priority, and with the same validity, force and effect that such Encumbrances had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors or their estates.  Following the Closing, no holder of any Encumbrance on any of the Acquired Assets shall interfere with the Purchaser's use or enjoyment of any of the Acquired Assets based on or related to such Encumbrance or any actions that the Debtors have taken or may take in their Chapter 11 Cases.

8.    Sale Effective.  At Closing, the transfer of the Acquired Assets to the Purchaser, including, without limitation, the assumption, assignment and transfer of the Assigned Contracts, will be a legal, valid, and effective transfer thereof, and vest the Purchaser with all right, title, and interest of the Debtors in and to the Acquired Assets, to the greatest extent permitted by applicable law, free and clear of all Encumbrances accruing or arising any time prior to the Closing Date, and except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Encumbrances. Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities holding Encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and Assumed Liabilities) are hereby forever barred, estopped, and permanently enjoined from asserting their respective Encumbrances against the Purchaser, any of the Purchaser's Stakeholders, any of its or their respective representatives, and each of their respective Acquired Assets and assets.

9.      Sale Self-Effectuating. The provisions of this Order authorizing the sale and transfer of the Acquired Assets free and clear of Encumbrances shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of this Order.  For the avoidance of doubt, on or after the Closing Date, the Debtors and/or the Purchaser shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Encumbrances on the Acquired Assets pursuant to the terms of this Order.

10.     Direction to Creditors.  This Order shall be (a) effective as a determination that, as of the Closing Date, all Encumbrances on the Acquired Assets (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) shall be unconditionally released, discharged and terminated as to the Purchaser and the Acquired Assets; and (b) binding upon all persons and entities, including all the Debtors' creditors and any holder of a Encumbrance in any of the Acquired Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Encumbrances on the Acquired Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, lis pendens or other document, instrument, notice or agreement evidencing any Encumbrance on the Acquired Assets has not delivered to the Debtors on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Acquired Assets, the Debtors and/or the Purchaser are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction or other documents with

- 18 -

#111838121v1

respect to the Acquired Assets on behalf of the applicable person or entity; and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances on the Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

11.     Direction to Recording Officers.  This Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments regarding the Acquired Assets or who may be required to report or insure any title or state of title in or to the Acquired Assets, (collectively, the "Recording Officers").  All Recording Officers are hereby authorized and directed to (a) accept any and all documents or instruments necessary and appropriate to consummate the Sale Transaction or to record and reflect that the Purchaser is the owner of the Acquired Assets free and clear of all Encumbrances (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) and (b) strike all recorded Encumbrances on the Acquired Assets from their records.

12.     Direction to Surrender the Acquired Assets.  All persons or entities in possession or control of any of the Acquired Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Acquired Assets to the Purchaser on the Closing Date.

- 19 -

13.     No Successor Liability.  The Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or the equivalent thereof) are not and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their estates as a result of the consummation of the Sale Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity; (b) deemed to have, de facto or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with the any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clauses (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, products liability or other law, doctrine, rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine, rule or regulation.

14.     No Assumption by Purchaser. The Purchaser shall not assume, nor be deemed to have assumed or in any way be responsible for, any liability or obligation of any of the Debtors or any of their estates including, but not limited to, any Excluded Liabilities (as defined in the Asset Purchase Agreement), any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors or similar liability, except as otherwise expressly provided in the Asset Purchase Agreement, and the Motion, the Notice of Successful Bidder, the Sale, or the Assumption and Assignment Notice, which contain sufficient notice of such limitation in accordance with applicable law.  Except for the Assumed Liabilities (as defined in the Asset Purchase Agreement), the transfer of the Acquired

- 20 -

Assets and the Assigned Contracts to the Purchaser under the Asset Purchase Agreement shall not result in (a) the Purchaser, its affiliates or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or any of the Acquired Assets having any liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors (including, without limitation, Excluded Liabilities); (b) the Purchaser, its affiliates or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or any of the Acquired Assets having any liability whatsoever with respect to, or being required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Encumbrances or Excluded Liabilities; or (c) the Purchaser, its affiliates or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or any of the Acquired Assets having any liability or responsibility to any of the Debtors except as is expressly set forth in the Asset Purchase Agreement. Pursuant to the Asset Purchase Agreement, the Purchaser shall maintain certain rights to modify the Acquired Assets and Excluded Liabilities in accordance with the terms thereunder, including any Assigned Contracts; *provided that* the Purchaser may not remove any Acquired Asset or add any Excluded Liability if such asset is otherwise restricted pursuant to the Chapter 11 Cases.

15.     <u>Prohibition on Proceeding Against Purchaser</u>. Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its assets (including the Acquired Assets) or its successors or assigns, with respect to any (a) Encumbrance on the Acquired

#111838121v1

Assets or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

16.     Assumption and Assignment of Contracts.  Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser free and clear of all Encumbrances pursuant to the terms of the Asset Purchase Agreement, as modified by the terms of any amendments reached by the Purchaser and the respective Counterparty, is hereby approved, and the requirements of sections 365(b)(1), 365(f)(2) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.   Upon the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser, each applicable Contract/Lease Counterparty shall be forever barred, estopped and permanently enjoined from raising or asserting against the Debtors, the Purchaser or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with or in any way related to, the Assigned Contracts existing as of the

- 22 -

Closing Date or arising by reason of the Closing.  Upon the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors in and to the Assigned Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts.  The Debtors' assumption and assignment of the Assigned Contracts to the Purchaser shall not constitute a default under or a termination of any Contract.

17.    Payment of Certain Indebtedness.[4]  Upon Closing, any M&A Transaction Fee payable to Jefferies LLC and Completion Fee payable to Alvarez & Marsal North America, LLC shall be paid or otherwise satisfied, escrowed or segregated from the proceeds of the Sale Transaction pursuant to and as set forth in the Bid Procedures Order.

18.    Cure Obligations.  Unless such Cure Costs are subject to any timely objection, the Cure Costs as to Assigned Contracts are hereby fixed at the amounts set forth in the Assumption and Assignment Notice or any Supplemental Assumption and Assignment Notice.  Any defaults or other obligations under the Assigned Contracts shall be deemed cured by the Debtors' or the Purchaser's (as applicable) payment or other satisfaction of the Cure Costs, if any, associated with the Assigned Contracts.  Payment of the applicable Cure Costs (if any), including any subsequent payments made after the Court's resolution of any dispute regarding the Cure Cost, shall, pursuant to section 365 of the Bankruptcy Code and other applicable law, (i) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing and (ii) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and as of the Closing Date, other

---

[4]    Capitalized terms used in paragraph [17] but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bid Procedures Order.

#111838121v1

than such payments, neither the Debtors nor the Purchaser shall have any further liabilities or obligations to the non-Debtor parties to the Assigned Contracts with respect to, and the non-Debtor parties to the Assigned Contracts shall be forever enjoined and barred from seeking, any additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) as a result of any defaults that arose, accrued or were incurred at any time on or prior to the Closing.

19.     Cure Objections.  Except as provided herein, all objections to the Debtors' calculation of Cure Costs with respect to any of the Assigned Contracts (each such objection, a "Cure Objection") have been overruled, withdrawn, waived, settled or otherwise resolved.  Any Cure Objections as to applicable Cure Costs that have not been resolved by the parties may be heard at a later date as set by the Court.  The pendency of a dispute relating to a particular Contract shall not prevent or delay the assumption or assignment of any other Contract or the closing of the Sale Transaction.

20.     Disputed Contracts. In the event of an objection by a Contract/Lease Counterparty to the Cure Costs asserted by Debtors or to the Debtors' ability to assume and assign or reject any Contract (such contract, a "Disputed Contract"), and such objection has not been resolved by the Closing, then the Debtors, with the consent of the Purchaser, and in accordance with the Asset Purchase Agreement or this Order, may elect to (a) not assume and assign such Disputed Contract; or (b) postpone the assumption of such Disputed Contract until the resolution of such objection; *provided that*, in no event shall any Debtor settle a Cure Costs objection with regard to any Disputed Contract without the express written consent of Purchaser (with an email consent being sufficient).  In the event that a dispute regarding a Disputed Contract has not been resolved, pending resolution of the dispute pursuant to this Order, the Contract/Lease Counterparty to such Disputed Contract shall not have any claim against the Debtors or the Purchaser (or any of

- 24 -

its Designees) for breach, infringement or any other similar type of claim for the use of any rights by the Purchaser under such Disputed Contract.

21. <u>Adequate Assurance</u>. The Purchaser has provided adequate assurance of future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code. Any Assumption and Assignment Objections (as defined in the Bid Procedures) that have not been withdrawn, waived or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser have been satisfied in accordance with the terms of this Order.

22. <u>Anti-Assignment Provisions Unenforceable</u>. No section or provision of any Contract that purports to (a) prohibit, restrict or condition the assignment of a Contract, including, but not limited to, the conditioning of such assignment on the consent of any Contract/Lease Counterparty to such Contract; (b) authorize the termination, cancellation or modification of a Contract based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the Contract/Lease Counterparty to a Contract, or modification of any term or condition upon the assignment of a Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) of the Bankruptcy Code and/or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

#111838121v1

23.     <u>Direction to Contract Counterparties</u>.  All Contract/Lease Counterparties to Assigned Contracts assigned to the Purchaser in accordance with the terms of this Order and the Asset Purchase Agreement shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser for any instruments, applications, consents or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser or the Purchaser's assignment to its designee(s) pursuant to this Order, as applicable.

24.     <u>Licenses and Permits</u>.  To the extent provided in the Asset Purchase Agreement and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Assigned Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  To the extent any license or permit necessary for the operation of the Acquired Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtors shall remain in place for the Purchaser's benefit until a new license or permit is obtained. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction.

#111838121v1

25.     Good-Faith Purchaser.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of any sale, transfer or assignment under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date) and, notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment under the Asset Purchase Agreement, shall be governed in all respects by the original provisions of this Order or the Asset Purchase Agreement, as applicable.

26.     No Avoidance.  Neither the Sale Transaction nor the Asset Purchase Agreement is subject to avoidance, and no party is entitled to any damages or other recovery in connection therewith under section 363(n) of the Bankruptcy Code.

27.     Bulk Sales.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

28.     Amendments.   The Asset Purchase Agreement may be amended, supplemented or otherwise modified by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that, any such amendment, supplement or modification shall not have a material adverse effect on the Debtors' estates.

29.     Binding Order.  This Order and the Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee

- 27 -

appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all Contract/Lease Counterparties to any Assigned Contracts and all Recording Officers.  Neither the Sale Transaction nor the Asset Purchase Agreement shall be subject to rejection or avoidance under any circumstances.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and its respective successors and assigns.

30.     Failure to Specify Provisions; Conflicts.  The failure specifically to include or mention any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Asset Purchase Agreement be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.

31.     Further Assurances.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Purchaser its right, title and interest in and to the Acquired Assets and the Assigned Contracts.

32.     Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Asset Purchase Agreement and to

- 28 -

#111838121v1

take any and all actions permitted or required under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

33.     No Stay of Order.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.  The provisions of this Order shall be self-executing.  Time is of the essence in implementing the Asset Purchase Agreement and closing the Sale Transaction.  Any party objecting to this Order or any of the relief granted herein must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing of the Sale Transaction or risk its appeal being foreclosed as moot.

34.     Governing Terms.  To the extent this Order is inconsistent with any prior order or pleading in these Chapter 11 Cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement, the terms of this Order shall govern.

35.     Retention of Jurisdiction.  This Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Asset Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning this Order, the Asset Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Acquired Assets and the Assigned Contracts.

36.     Debtors' Authorization.  The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

#111838121v1

37.     Government Treatment.  Notwithstanding any provision to the contrary in this Order, the Asset Purchase Agreement, or any other sale document (collectively, "Sale Documents"), nothing shall: (i) release, nullify, preclude, or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee, or operator of property that such entity owns, operates, or leases after the date of entry of this Order; (ii) affect the setoff or recoupment rights of the United States; (iii) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (iv) authorize the assumption, assignment, sale, or other transfer of any federal or state (a) grants, (b) grant funds, (c) property acquired or improved with grant funds, (d) contracts, (e) agreements, (f) awards, (g) task orders, (h) property, (i) intellectual property, (j) patents, (k) leases, (l) certifications, (m) applications, (n) registrations, (o) billing numbers, (p) national provider identifiers, (q) provider transaction access numbers, (r) licenses, (s) permits, (t) covenants, (u) inventory, (v) guarantees, (w) indemnifications, (x) data, (y) records, or (z) any other interests belonging to the United States or any state (collectively, "Governmental Interests") without compliance by the Debtors and the Purchaser with all terms of the Governmental Interests and with all applicable non-bankruptcy law; (v) be interpreted to set cure amounts or to require the United States or any state to novate, approve, or otherwise consent to the sale, assumption, assignment, or other transfer of any Governmental Interests; (vi) expand the scope of 11 U.S.C.§ 525; (vii) waive, alter, or otherwise limit the United States' rights with respect to any licenses in the Acquired Assets arising pursuant to applicable non-bankruptcy law, including any rights arising under the Bayh-Dole Act (35 U.S.C. 201 *et seq.*); or (viii) affect the Debtors' or Purchaser's requirements to comply with applicable non-bankruptcy law, including, but not limited to, the Bayh-Dole Act (35 U.S.C. 201 *et seq.*).

#111838121v1

- 31 -

38.     DOE Specific Language.  Notwithstanding any provision to the contrary in the Sale Documents, nothing shall affect or impair the rights or interests of the U.S. Department of Energy with respect to any property funded, purchased, improved or developed with the Assistance Award DE-MS0000002 (the "Funded Property") pursuant to the terms and conditions of the Assistance Award DE-MS0000002, and the Funded Property shall continue to be subject to all the terms, conditions, and restrictions imposed by Assistance Award DE-MS0000002, its terms and conditions and 2 C.F. R. Parts 200 and 910. Any future disposition of or other action concerning the Funded Property shall comply with the Assistance Award DE-MS0000002's terms and conditions and all applicable non-bankruptcy law.  Notwithstanding the foregoing, all of Purchaser's rights are reserved with respect to the foregoing, including the Assistance Award DE-MS0000002.

39.     Conflict.  In the event of an inconsistency or conflict between any provision of the Sale Documents and any provision of this Order, as to the United States or any state, the provisions of this Order and federal and state law shall govern.


 Signed: June _____, 2026

_____
CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

#111838121v1